# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| FELICIA SANDERS, individually and as legal custodian for K.M., a minor, <br><br> Plaintiff, <br> vs. <br><br> The United States of America, <br><br> Defendant. | Civil Action No.: 2:16-cv-2356-RMG <br><br> *Consolidated with* 2:16-cv-2350; 2:16-cv-2351; 2:16-cv-2352; 2:16-cv-2354; 2:16-cv-2355; 2:16-cv-2357; 2:16-cv-2358; 2:16-cv-2359; 2:16-cv-2360; 2:16-cv-2378; 2:16-cv-2405; 2:16-cv-2406; 2:16-cv-2407; 2:16-cv-2409; and 2:16-cv-2746 |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO CONDUCT JURISDICTIONAL DISCOVERY

Plaintiff Felicia Sanders, individually and as legal custodian for K.M., a minor, by and through her undersigned counsel, hereby replies to Defendant the United States of America's Memorandum in Opposition to Plaintiff's motion to conduct jurisdictional discovery.

Defendant argues that this Court lacks subject matter jurisdiction due to the discretionary function exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a). Defendant repeatedly asserts that its agents complied with undisclosed policies in failing to deny the sale of a firearm to Dylann Roof. However, Defendant has refused to produce these policies or, indeed, any information regarding how the Roof background check failed to result in the "denial" that all now acknowledge should have been issued.

The U.S. Supreme Court has stated that "the discretionary function exception will not apply when a federal statute, regulation, *or policy* specifically prescribes a course of action for an employee to follow." <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988) (emphasis added). In addition, even if there is an element of judgment in the employee's decision, the discretionary function only applies when "that

judgment is of the kind that the discretionary function exception was designed to shield." Id. The discretionary function exception only "insulates the Government from liability if the action challenged in the case involves permissible exercise of *policy* judgment." Id. at 537 (emphasis added).

Defendant wants the Court to dismiss this matter without an examination of the federal policies that prescribed its agent's course of action in conducting background checks under NICS. Rather, Defendant apparently expects the Court and the Plaintiffs to take them at their word that these undisclosed policies were followed and that they implicate the kind of judgment that the discretionary function is designed to shield. Put simply, it is not possible for the Court or Plaintiffs to determine whether the discretionary function exception applies when those policies and protocols are not provided. The law governing the FTCA does not allow for summary dismissal based on unchallenged and undisclosed policies and procedures.

Defendant's arguments, as well as the arguments set out in Defendant's Reply Memorandum in Support of its Motion to dismiss, Dkt. No. 24, are based almost entirely on documents and information that has not been provided to Plaintiff or to the Court. Defendant's argument is simple: its policies and protocols placed discretion and policy judgment in the hands of its agents. Defendant repeats this argument even though the one guideline that is in the public domain, the Federal Regulations that governed Defendant's actions, plainly states that Defendant *must* deny the sale of a firearm to disqualified persons like Mr. Roof. 28 C.F.R. § 25.6(c)(1)(iv)(C).

It is not in dispute that the City of Columbia Police Department Report disqualified Roof from purchasing a handgun. This fact was admitted by FBI Director James Comey immediately following the Charleston shootings. Statement of FBI Director James Comey, Exhibit No. 1 to

Complaint ("Roof should not have been allowed to purchase the handgun. . . . Importantly, as part of the arrest, the report by the Columbia police reflected that Roof admitted he was in possession of drugs. If a NICS examiner saw that, Roof would be denied permission to buy a gun.").

It is also not in dispute that the disqualifying report was in at least one of Defendant's databases. Office of the Inspector General, U.S. DOJ, "Audit of the Handling of Firearms Purchase Denials Through the National Instant Criminal Background Check System," Page 22, Exhibit No. 10 to Plaintiff's Memorandum in Opposition to Motion to Dismiss, Dkt. No. 15-10 ("According to the FBI Inspection Division report, N-DEX contained data that would have revealed the prohibiting incident report for the alleged shooter in the Charleston shooting.").

Defendant asks the Court to ignore the regulations that mandated a "denial" in this case and ignore the admitted fact that there was a disqualifying report in at least one of its databases. Instead, Defendant asks the Court to dismiss this action based on unsupported assertions that its internal and unproduced guidelines and protocols put discretion in the hands of its agents to allow sales to disqualified individuals. Defendant cites to several documents that it has not produced and facts that are not supported by anything in the record or in the possession of Plaintiff, including:

1. **Policy and/or protocol manuals issued by the FBI or its divisions governing the conduct of background checks performed by the Defendant.** Defendant has repeatedly referenced these policies throughout its briefs and claimed that they were followed and create discretionary procedures, but none of these policies or protocols have been produced. Consequently, neither Plaintiffs nor the Court can make an independent determination of whether the Defendant's policies were followed, whether they gave the agent discretion, and, if

3

so, whether that discretion was based on policy decisions that are protected by the discretionary function exception.

2.  **Information regarding which of Defendant's databases contained the City of Columbia Police Department Report, which disqualified Dylann Roof from purchasing a firearm.**  Publicly available information shows that this disqualifying report was in at least one FBI index called the N-Dex.  Office of the Inspector General, U.S. DOJ, "Audit of the Handling of Firearms Purchase Denials Through the National Instant Criminal Background Check System," Page 22, Exhibit No. 10 to Plaintiff's Memorandum in Opposition to Motion to Dismiss, Dkt. No. 15-10.  Throughout its briefs, Defendant has studiously avoided clarifying whether the disqualifying report was in any of its other databases.  Of course, if the report was in one of those databases (or if the Court finds that the N-Dex database should have been included in the NICS background check), Defendant had no choice but to issue a denial for Roof's firearm purchase.

3.  **How and why did the FBI and its agents fail to locate the disqualifying report and fail to issue a denial of the sale in violation of 28 C.F.R. § 25.6(c)(1)(iv)(C).**  Defendant has only revealed, through the Statement of FBI Director James Comey, that it made a mistake. Complaint, Exhibit No. 1.  Defendant has refused to reveal how or why that mistake was made. This would also include information regarding why the Defendant did not locate the disqualifying report in the N-Dex, and why the N-Dex was apparently not searched by Defendant's agent.

4.  **Defendant's "contact sheet" used in the Roof background check.**  Defendant's "contact sheet" is repeatedly referenced throughout Defendant's briefs and appears to be at the center of Defendant's admitted failure in the Roof background check.

5.   **Defendant's 30-day review of its failures in this matter.**  Defendant has acknowledged that it conducted a 30-day review to examine the procedures that led to the government's admitted failures in this matter, namely the failure to issue a denial following the Roof background check.  Defendant has refused to provide this review.

All of this material will shed light not only on the discretionary function exception defense asserted by Defendant, but also on the merits of the case.  The issues are plainly intertwined, which, alone, is reason enough to deny Defendant's Motion to Dismiss. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

Indeed, the material sought by Plaintiff could also shed light on the other defenses raised in Defendant's Motion to Dismiss.  Information on how Defendant's search failed could support Plaintiff's position that the misrepresentation exception has no place in this analysis.  It could also aid the Court in determining whether a cause of action against the Defendant exists under South Carolina law.

Based on the foregoing, Plaintiff would ask that the Court deny Defendant's motion to dismiss or, in the alternative, allow Plaintiff to conduct jurisdictional discovery.

Respectfully submitted,

By: /s/Gedney M. Howe, III
Gedney M. Howe, III (Fed Bar #1971)
Law Offices of Gedney M. Howe
P.O. Box 1034
Charleston, SC 29402
Phone: 843-722-8048
Fax: 843-722-2140
kleroy@gedneyhowe.com

5

6

                                                      Andrew J. Savage, III
                                                      Savage Law Firm
                                                      15 Prioleau St.
                                                      Charleston, SC 29401
                                                      Phone: 843-720-7470
                                                      Fax: 843-720-7478
                                                      andy@savagelaw.com
                                                      *Attorneys for Plaintiff*

March 2, 2017