**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Felicia Sanders, *individually and as legal custodian for K.M, a minor,* | ) ) ) | Civil Action No. 2:16-2356-RMG |
| Plaintiff, | ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| United States of America, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the Court on Defendant's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 12) and Plaintiff's motion for jurisdictional discovery (Dkt. No. 16). For the reasons set forth below, the Court grants Plaintiff's motion for jurisdictional discovery. Defendant's motion to dismiss is denied without prejudice except as provided below; Defendant may renew its motion after the completion of jurisdictional discovery.

## I.    Background

On February 28, 2015, a City of Columbia police officer arrested Dylann Roof for possession of Suboxone, a controlled substance, without a prescription. (Dkt. No. 1 ¶¶ 8–9.) That arrest occurred in a portion of the City of Columbia that lies in Lexington County. (Dkt. No. 1-1.) Less than three months later, on April 11, 2015, Roof attempted to purchase a Glock handgun from Shooter's Choice, a federally licensed firearms dealer located in West Columbia, South Carolina. (Dkt. No. 1 ¶ 18.) Federal law prohibits federally licensed firearms dealers from selling firearms to certain categories of persons, including, *inter alia*, unlawful users of controlled substances (18 U.S.C. § 922(d)(3)) and persons under indictment for or convicted of a felony (18 U.S.C. § 922(d)(1)). Federally licensed firearms dealers in South Carolina are required to use the National Instant Criminal Background Check System ("NICS"), an FBI program created by the Brady

-1-

Handgun Violence Prevention Act of 1993, to ensure firearms are sold legally. (Dkt. No. 1 ¶¶ 19–23.) The NICS receives requests for background checks on potential buyers from firearms dealers, searches databases it maintains for matching information, and provides one of three possible responses to the dealer: (1) "Proceed," (2) "Delayed," or (3) "Denied." 28 C.F.R. § 25.6(c)(1)(iv). A "denied" response bars the proposed sale and a "Proceed" response permits it. A "Delayed" response "indicates that the firearm transfer should not proceed pending receipt of a follow-up 'Proceed' response from the NICS or the expiration of three business days (exclusive of the day on which the query is made), whichever occurs first." *Id.*

As required by law, Shooter's Choice initiated a background check of Roof through the NICS. (*Id.* ¶ 24.) The Government admits that, because of Roof's recent arrest for unlawful possession of a controlled substance (erroneously listed in the NICS as a *felony* drug arrest (Dkt. No. 1 ¶ 17)), NICS should have issued a "Denied" response to Shooter's Choice, preventing the sale of a gun to Roof. (*See* Dkt. No. 1-1 (FBI Director James Comey confessing error).) Instead, the FBI, baffled by the fact that a city might incorporate land in multiple counties, failed to prevent the sale. (*See id.*)[1]

Specifically, the assigned NICS examiner noted Roof was listed as having been arrested on a felony drug charge, but for some reason, the Lexington County Sheriff's office was listed as the arresting agency, not the City of Columbia Police Department. (*Id.*) The examiner contacted the Lexington County Sheriff's Office and she was told to check with the City of Columbia Police

---

[1] Municipalities commonly span multiple counties and lists of multicounty municipalities are readily available. *See, e.g., List of U.S. municipalities in multiple counties*, Wikipedia, http://en.wikipedia.org/wiki/List_of_U.S._municipalities_in_multiple_counties (listing 628 examples of multicounty municipalities, including Columbia, SC (Lexington County and Richland County), Charleston, SC (Charleston County and Berkeley County), and North Charleston, SC (Charleston County and Dorchester County)).

Department. (*Id.*) She never did that. Instead, she decided to contact the City of West Columbia

Police Department, which of course had no record of Roof's arrest. (*Id.*) At that point, the FBI

apparently gave up its attempt to learn about Roof's purportedly felonious drug arrest, and it took

no action to prevent Roof from being allowed to purchase a handgun. (*See id.*; Dkt. No. 12-1 at

22); *see also* Trial Transcript 670:21–672:1, *United States v. Roof*, 15-472-RMG (D.S.C. Dec. 12,

2016).

The FBI cast aside the case, leaving it in a "Delayed" status, and so, on April 16, 2015,

Roof was permitted to purchase his Glock. (Dkt. No. 1-1.) Two months later, on June 17, 2015,

he used it to murder nine parishioners, and to attempt to murder three others, in an attack on Mother

Emanuel AME Church in Charleston, South Carolina. (Dkt. No. 1 ¶¶ 34–35.) After the attack,

the FBI researched Roof's eligibility to purchase a firearm with more ardor (*see* Dkt. No. 1-1) and,

on June 29, 2015, the NICS instructed Shooter's Choice not to sell the Glock to Roof. Trial

Transcript 681:19–685:5, *United States v. Roof*, 15-472-RMG (D.S.C. Dec. 12, 2016). Roof was

subsequently convicted on many capital charges and sentenced to death. Judgment, *United States*

*v. Roof*, 15-472-RMG (D.S.C. Jan. 23, 2015). Survivors of the attack and family of the slain have

brought suits alleging the failure to refuse permission for Roof to purchase the murder weapon was

a violation of non-discretionary duties imposed by the Brady Handgun Violence Prevention Act

and associated regulations, actionable as negligence under the Federal Tort Claims Act ("FTCA").

(Dkt. No. 1 ¶ 32.)

On February 9, 2017, the Court consolidated the actions for pretrial purposes, with this

action designated as the master docket. (Dkt. No. 22.) The Government moves to dismiss for lack

of subject-matter jurisdiction, arguing that the FTCA bars Plaintiffs[2] claims under the discretionary-function and misrepresentation exceptions and that Plaintiffs' claims are not actionable under South Carolina law. (Dkt. No. 12.) Plaintiffs separately move for jurisdictional discovery. (Dkt. No. 16.)

## II.    Legal Standard

A motion to dismiss for lack of subject-matter jurisdiction filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of a court to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). A challenge to subject-matter jurisdiction may contend either 1) that the complaint fails to allege facts sufficient to establish subject matter jurisdiction or 2) "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Where the sufficiency of the jurisdictional allegations in the complaint is challenged facially, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (2009). If, however the defendant contends "that the jurisdictional allegations of the complaint [are] not true," the plaintiff bears the burden to prove facts establishing jurisdiction and the district court may "decide disputed issues of fact." *Id.* In that case, because the plaintiff's allegations are not presumed true, "the court should resolve the relevant factual disputes only after appropriate discovery." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016). And where "the jurisdictional facts and the facts central to a tort claim are inextricably intertwined," so that a challenge to the truth of the jurisdictional facts indirectly challenges the plaintiff's claims on the

---

[2] The Court herein uses "Plaintiffs" to refer collectively to all Plaintiffs in the consolidated actions. Citations refer to filing in the above-captioned lead case, *Sanders v. United States*, Civ. No. 2:16-2356-RMG

merits, "the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Kerns*, 585 F.3 at 193.

## III.    Discussion

The United States is immune from suit without the consent of Congress. *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). The FTCA authorizes lawsuits against the United States for wrongful acts or omissions of federal employees acting within the scope of their office in circumstances where a private person would be liable for similar claims in the jurisdiction where the claim arose. 28 U.S.C. § 1346(b). Under the FTCA, the United States cannot be held liable for actions that fall within its discretionary function, an exception based on the premise that the judiciary should not "second guess" policy choices of the Executive Branch through private litigation. 28 U.S.C. § 2680(a); *Berkovitz ex rel. Berkovitz* v. *United States*, 486 U.S. 531, 536–37 (1988). Nor may the United States be held liable for claims arising from misrepresentation—whether negligent or intentional. 28 U.S.C. § 2680(h); *Block v. Neal*, 460 U.S. 289, 296 (1983). And governmental negligence in the enforcement of federal regulations is actionable under the FTCA only if "the alleged breach of duty is tortious under state law," or if "the Government had breached a duty imposed by federal law that is similar or analogous to a duty imposed by state law." *Fla. Auto Auction of Orlando, Inc. v. United States*, 74 F.3d 498, 502 (4th Cir. 1996) (internal quotation marks and citation omitted).

The Government moves to dismiss, arguing each of those restrictions—the discretionary-function exception, the misrepresentation exception, and the lack of a duty to Plaintiffs under state law—deprive the Court lacks subject-matter jurisdiction over Plaintiffs' claims. For the reasons set forth below, the Court orders jurisdictional discovery regarding the applicability of the discretionary-function exception, to be completed by June 1, 2017, and denies the motion to dismiss as to the discretionary-function exception without prejudice to the Government's ability

to renew its motion after discovery. The Court also denies the motion to dismiss without prejudice regarding a lack of a duty to Plaintiffs under theories of negligent creation of risk and negligence *per se*. The Court denies with prejudice the Government's motion to dismiss as to the misrepresentation exception.

## A.    Discretionary-Function Exception

A claim falls within the discretionary-function exception if two elements are satisfied. First, the challenged conduct must be the product of a discretionary decision in which the governmental conduct was a matter of judgment or choice. *Berkovitz*, 486 U.S. at 536. However, if law or policy mandated a particular course of action, the discretionary-function exception does not apply to a deviation from the mandated course of action. *Id.* at 536–37 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive."). Second, the decision must be "based on considerations of public policy." *Id.* at 537. This limits the discretionary-function exception to the kinds of judgments the exception "was designed to shield." *Id.* at 536. When the Government asserts that a claim is barred by the discretionary-function exception, the plaintiff bears the burden to show the discretionary-function exception does not apply. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The Government argues the examiner issued a "Delayed" response to Shooter's Choice's inquiry about Roof's proposed gun purchase because that response "was the only permitted response under the circumstances." (Dkt. No. 12-1 at 22.) According to the Government, that fact places the decision within the discretionary-function exception because where "'a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the

-6-

promulgation of the regulation.'" (*Id.* at 22–23 (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).) Plaintiffs agree that federal regulations mandated the examiner's response, but they of course argue the mandated response was "Denied."

Plaintiffs also argue the Government was negligent in maintaining the integrity of the NICS databases, in violation of certain mandatory regulations. (*See* Dkt. No. 15 at 20–21.) Plaintiffs' statement that the FBI "has no discretion with regards to the maintenance of its databases" *seems* rather unlikely. (Dkt. No. 15 at 20.) Likewise, the Government's argument that the creation, maintenance, indexing, and management of databases is discretionary *per se* also *seems* overreaching. (Dkt. No. 12-1 at 23–25.) But the Court must adjudicate Plaintiffs' claims, not speculate about them. The legal standard is whether the challenged conduct was the product of a discretionary decision in which the governmental conduct was a matter of judgment based on considerations of public policy. Whether the challenged database-maintenance conduct meets that standard is a question of fact to be decided on careful review of a complete record.

The Government's discretionary-function arguments are challenges to the truth of allegations establishing subject-matter jurisdiction. Whether the examiner should have, or could have, acted differently under the "circumstances" is a disputed jurisdictional fact, as is the challenge to the FBI's database-maintenance conduct. The Court will not decide disputed facts without a complete record developed through appropriate discovery. *See 24th Senatorial Dist. Republican Comm.*, 820 F.3d at 629. The Court therefore grants Plaintiffs' motion for jurisdictional discovery[3] and orders discovery regarding (1) the background check on Dylann Roof

_____

[3] Plaintiffs move for jurisdictional discovery only regarding the discretionary-function exception. (Dkt. No. 16-1 at 3.) In opposition, the Government argues (1) the need for discovery is mooted by independent bases for dismissal, (2) discovery is unnecessary because some other cases have been dismissed under the discretionary-function exception without discovery, and (3) discovery is futile because "the decision as to whether Roof was disqualified by federal law from receiving a

initiated in April 2015, and (2) the policies, protocols, and procedures governing maintenance of data used for that background check. Jurisdictional discovery shall be completed by June 1, 2017. The Government may renew its discretionary-function exception arguments after discovery.

## B.    Misrepresentation Exception

The FTCA's waiver of immunity "shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights." 28 U.S.C. § 2680(h) (emphasis added). The exception for misrepresentation encompasses claims within "the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,'" in addition to claims for intentional misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 702 (1961). The "essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block*, 460 U.S. at 289. The exception applies where damages are caused by the Government's alleged breach of a "duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely," rather than the breach of any separate, distinct statutory duty. *Id.* at 708–09; *see also Chang-Williams v. United States*, 965 F. Supp. 2d 673, 682–86 (D. Md. 2013). It does not bar negligence claims where the duty allegedly breached is distinct from the duty to use due care in communicating information." *Block*, 460 U.S. at 297.

---

firearm ultimately would have entailed the exercise of policy judgment." (*See* Dkt. No. 25.) The Government's other asserted bases for dismissal do not moot the need for discovery because the Court denies the motion to dismiss regarding those arguments. The Government's other two arguments are entirely without merit. The conduct of the FBI's investigation of Roof may or may not fall within the discretionary-function exception, but Roof was disqualified from purchasing a firearm by mandatory federal law, not a discretionary executive policy judgment.

The Government argues the misrepresentation exception bars Plaintiff's claims because "the gravamen of plaintiff's claims is the government's failure to communicate a denial to Shooter's Choice." (Dkt. No. 12-1 at 28.)  The Court finds no merit in that argument.  The gravamen of Plaintiffs' claims is not the failure to *communicate* information (nor is it the communication of misinformation).  The information communicated to Shooter's Choice—a response of "Delayed"—was factually accurate, as far as it went.  The gravamen of the complaint is the Government's failure to *act* to prevent a violation of federal law, as required by allegedly mandatory procedures.  Plaintiffs allege breach of a duty "distinct from any duty to use due care in communicating information." *Cf. Block*, 460 U.S. at 297.  What is alleged is negligence in the conduct of Roof's background check, not a failure of communication with Shooter's Choice. "Delayed" unquestionably was an accurate description of the Government's background investigation of Roof, but Plaintiffs allege that it should not have been an accurate description of the Government's investigation and that, but for actionable negligence, it would not have been.

The Court therefore denies the Government's motion to dismiss as to the misrepresentation exception.

## C.    Validity of Plaintiffs' Negligence Claims

The FTCA waives the United States' immunity from claims arising from wrongful acts or omissions of federal employees acting within the scope of their office in circumstances where a private person would be liable for similar claims in the jurisdiction where the claim arose.  28 U.S.C. § 1346(b).  Immunity from negligence claims is waived only if "the alleged breach of duty is tortious under state law," or if "the Government had breached a duty imposed by federal law that is similar or analogous to a duty imposed by state law." *Fla. Auto Auction of Orlando, Inc.*, 74 F.3d at 502.  When the acts at issue involve the performance of a uniquely governmental

function, the FTCA waives immunity where "a private person would be responsible for similar negligence." *Id.* (internal quotation marks omitted).

South Carolina's substantive law of negligence governs Plaintiffs' negligence claims. *See United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003).[4]  In South Carolina, plaintiffs must show (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by a negligent act or omission, (3) damages suffered by Plaintiff, (4) which actually and proximately resulted from the breach. *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 656 (S.C. 2006).  South Carolina law imposes no civil obligation to conduct background checks before selling firearms and generally imposes no duty to protect others from a third party's criminal acts, so the Government argues it had no duty under South Carolina law to protect Plaintiffs "from any conceivable criminal act that Mr. Roof might commit" by blocking his attempt to purchase a firearm.  (Dkt. No. 12-1 at 30–31 (citing *Cramer v. Balcor Prop. Mgmt., Inc.*, 441 S.E.2d 317, 318–19 (S.C. 1994)).)

In response, Plaintiffs argue three theories: the Government voluntarily undertook a duty to protect Plaintiffs from Roof, the Government negligently created the risk that Roof would injure Plaintiffs, and negligence *per se*.  For the reasons described below, the Court finds Plaintiffs' voluntarily undertaken duty theory to be implausible on its face, but finds that Plaintiffs may have plausibly pleaded negligent creation of risk and negligence *per se* under South Carolina law.

---

[4] Both parties argue the application of South Carolina law.  The FTCA requires liability to be determined "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The "law of the place" refers to the law, including choice-of-law principles, of the state where the negligent act or omission occurred. *St. Louis Univ.*, 336 F.3d at 300.  The negligence alleged in this case arguably occurred in West Virginia.  West Virginia adopts the traditional rule that the substantive rights between parties are determined by the law of the place of injury—here, South Carolina. *McKinney v. Fairchild Int'l, Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997).  South Carolina adopts the same rule. *Lister v. NationsBank of Del., N.A.*, 494 S.E.2d 449, 454 (S.C. Ct. App. 1997).

-10-

While persons owe no general duty to protect others from third parties, South Carolina law holds persons liable when they negligently create a foreseeable risk of harm from a third party. *Greenville Mem'l Auditorium v. Martin*, 391 S.E.2d 546, 548 (S.C. 1990). In South Carolina,

> [t]he law is well settled that in order to establish liability it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence would probably cause injury to something or someone. He may be held liable for anything which appears to have been a natural and probable consequence of his negligence. If the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability.

*Childers v. Gas Lines, Inc.*, 149 S.E.2d 761, 765 (S.C. 1966) (citations omitted).

Plaintiffs allege, in effect, that negligently failing to prevent Roof from purchasing his Glock was a substantial factor in the harm suffered by the victims of Roof's attack on Mother Emanuel using that same Glock. That allegation appears, at first glance, to be sufficiently plausible at least to survive a motion to dismiss. *See Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) ("To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.' If her explanation is plausible, her complaint survives . . . regardless of whether there is a more plausible alternative explanation."). The Court therefore denies the motion to dismiss. The parties' briefing on negligent creation of risk, however, is inadequate. (*See, e.g.*, Dkt. No. 15 at 29 (Plaintiffs providing one paragraph on the issue, which discusses one case); Dkt. Nos. 12 & 24 (Government not addressing issue).) The Court therefore denies the motion to dismiss without prejudice to the Government's ability to renew its motion with regard to negligent creation of risk, after jurisdictional discovery.

Another exception to the general rule of no general duty to protect others from third parties arises when a defendant voluntarily assumes a duty to do so. *Crowley v. Spivey*, 329 S.E.2d 774,

780 (S.C. Ct. App. 1985) ("[O]ne who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care."). Plaintiffs argue the FBI voluntarily assumed the duty to screen prospective gun purchasers and so the Government therefore can be held liable for negligence in background checks on prospective gun purchasers. (Dkt. No. 15 at 33–34.) But Plaintiffs' argument is implausible on its face. The FBI performs background checks for firearms sales because Congress requires the FBI to do so. *See* Brady Handgun Violence Prevention Act of 1993 § 103, Pub. L. 103-159, 107 Stat. 1536, 1541–43 (1993). The FBI did not voluntarily decide to perform background checks any more than the Bureau of Prisons voluntarily decided to incarcerate criminals sentenced to prison.

That the FBI did not volunteer to conduct background checks for gun purchases, but instead is required by law to do so, suggests another theory of liability. Under South Carolina law, a statute may create a duty of care if the plaintiff is in the class of persons the statute intends to protect and the plaintiff's injury is in the class of harms the statute intends to prevent. *See Rayfield v. S.C. Dep't of Corrs.*, 374 S.E.2d 910, 913–15 (S.C. Ct. App. 1988). In such cases, violation of the statute satisfies the breach of duty element in a negligence action, and negligence *per se* is established when the plaintiff shows (1) that the defendant breached a standard of conduct established by statute and (2) that the breach proximately caused damage to the plaintiff. *Id.* Further, under South Carolina law violation of a regulation may also constitute negligence *per se* if the regulation has the force of law. *Norton v. Opening Break of Aiken, Inc.*, 443 S.E.2d 406, 408 (S.C. Ct. App. 1994) (collecting cases).

Plaintiffs allege the Government breached a standard of conduct imposed by federal statutes and regulations, including 18 U.S.C. § 922 and 28 C.F.R. pt. 25. (Dkt. No. 1 ¶¶ 53–61.) Moreover, it appears at least plausible that those federal statutes and regulations prohibiting certain

persons from obtaining firearms are intended to protect citizens from being shot by those proscribed persons.

The Government, however, argues South Carolina's "public duty rule" prevents Plaintiffs from asserting negligence *per se* claims. (Dkt. No. 24 at 15.) "The 'public duty' rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public. Such statutes create no duty of care towards individual members of the general public." *Summers v. Harrison Const.*, 381 S.E.2d 493, 496 (S.C. Ct. App. 1989). Statutes create a duty of care from which a negligence action against public agencies or officers can arise only if

> (1) an essential purpose of the statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know of the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.

*Id.*

Nonetheless, because Plaintiffs plausibly allege the Government breached a standard of conduct imposed by federal statutes and regulations, which are plausibly intended to protect Plaintiffs from the type of harms they suffered, the Court denies the Government's motion to dismiss. The parties, however, have not briefed the issues of whether Plaintiffs are within the class of persons those statutes and regulations intend to protect, or whether their injuries are within the class of harms those statutes and regulations intend to prevent. Nor have they briefed the public duty rule, beyond a single paragraph at the end of the Government's reply brief. (Dkt. No. 25 at 15.) The Court therefore denies the motion to dismiss without prejudice to the Government's ability to renew its motion with regard to negligence *per se*, after jurisdictional discovery.

-14-

### IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for jurisdictional discovery (Dkt. No. 16) and **DENIES** Defendant's motion to dismiss (Dkt. No. 12).  Defendant's motion to dismiss is **DENIED WITHOUT PREJUDICE** as to the discretionary-function exception, the argument that Plaintiffs' claims are not actionable under South Carolina law under theories of negligent creation of risk and negligence *per se*, and is **DENIED WITH PREJUDICE** as to the misrepresentation exception.    The Court **ORDERS** jurisdictional discovery to be completed by June 1, 2017.    Defendant may renew its motion to dismiss regarding the discretionary-function exception, negligent creation of risk, and negligence *per se* after the close of jurisdictional discovery.    Pursuant to the Court's consolidation order, the Clerk is directed to terminate all pending motions in related cases.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 23, 2017
Charleston, South Carolina

-14-